**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

UNITED STATES OF AMERICA                    CASE NO. 1:07cr150

              Plaintiff                    JUDGE BARRETT

    -vs-

FELTON WALKER

              Defendant

**OPINION AND ORDER**

This matter is before the Court pursuant to Defendant Felton Walker's motion to suppress evidence obtained against him (Doc. 21).  A hearing was held on February 4, 2008.  Subsequent to the hearing both parties filed post-trial briefs.  The Court now considers all of the pleadings filed in this case, responses thereto and the evidence adduced at the aforesaid hearing.

**FACTS**

On August 27, 2007 Officer Chris Vogelpohl of the Cincinnati Police Department and Anthony Josephs of the Ohio Parole Board had positioned themselves in an unmarked car in a parking lot of an apartment building located at 4467 Colerain Avenue, Cincinnati, Ohio.  Their intent was to maintain surveillance of the apartment building and parking area for suspected drug activity immediately prior to the execution of a search warrant by the Cincinnati S.W.A.T. team.  While the officers were in the unmarked car, Officer Vogelpohl was wearing a tactical vest with "police" printed on the front and back and Joseph wore a shirt with "parole" on the back.  The apartment building was located in a high rate of crime

Page 1 of  5

area and Officer Vogelpohl had previously met with the property manager of the apartment building who complained about drug activity.  The officers' function was to notify the search team of pre-search activity, in both the parking lot and the complex.   This included identification of potentially targeted individuals and innocent bystanders.  While in their surveillance position the officers observed a man, later identified as Mr. Walker, exit the apartment building, enter a parked green Cadillac and return to the building.  This happened on more than one occasion.  The officers ran the vehicle's license plate and determined that the owner of the car, Felton Walker, had a criminal history.  The Walker's name was familiar to the parole office who had previously seen his picture.  This information allowed the officers to be able to determine the individual in the parking lot was Walker who had criminal history.

During the surveillance, a vehicle with two white females pulled into the parking area of the complex whereupon one female subject entered the complex, returned to the vehicle and then pulled out of the complex.  The officers radioed for other officers to stop the vehicle and its occupants.  After the female subjects had departed the area the Defendant left the vicinity of his car and cautiously approached the officers' vehicle.  It is uncontroverted  that neither Mr. Walker nor his motor vehicle were targets of the search warrant and that there was no observed contact between the Defendant and the visitors to the complex.  However, the surveillance officers observed that Defendant took notice of their presence in the parking lot and made visual contact with them in their car on more than one occasion.  Mr. Walker approached the unmarked car in a manner known as "blading."  Officer Vogelpohl testified that the Defendant's posture and hand positions were in such a manner as to make Officer Vogelpohl concerned for his personal safety.  Officer

Vogelpohl radioed for another officer to intercept Mr. Walker.  However, Mr. Walker reached the car before any interception could be made.  Mr. Walker walked up to the police car in a sideways fashion and knocked on the window with his left hand while his right hand remained to his side and out of the officers' view.  The arrival of the S.W.A.T. team was imminent and Officer Vogelpohl exited the unmarked car and ordered the Defendant to the ground and asked if he had anything on him whereupon the Defendant replied that he had a gun.  The firearm was recovered from the ground and the Defendant was seized and secured.  Mr. Walker was then advised of his *Miranda* rights whereupon he indicated that he carried the firearm for his protection.  He later denied that the gun was his saying that it came from Officer Vogelpohl's boot.

## ANALYSIS

The question of what constitutes reasonable suspicion is heavily dependent upon the facts of each case and does not lend itself to precise categorizations within the case law.  *United States v. Harris*, 192 F.3d 580, 585 (6th Cir. 1999).  A police officer may stop an individual, question him, and perform a carefully limited pat-down search for weapons when the officer reasonably concludes that criminal activity may be afoot but the officer must be able to point to a specific, articulatable facts which taken together reasonably warrant that intrusion.  *Terry v. Ohio*, 392 U.S. 1, 21, 30 (1968).  The scope of activities permitted during an investigative stop is determined by the circumstances that initially justified the stop.  *United States v. Obasa*, 15 F.3d 603, 607 (6th Cir. 1994) *citing United States v. Sharpe*, 470 U.S. 675, 682 (1985).

Probable cause is determined by the totality of the circumstances and is fact

dependent upon what the officer knew at the time he made the stop.  The totality of the circumstances analysis includes a realistic assessment of a situation from a law enforcement perspective.  *United States v. Puckett*, 422 F.3d 340, 342 (6th Cir. 2005).  In the context of a *Terry* stop, an individual's presence in an area of suspected activity, standing alone, is not enough to support a reasonable suspension that a person has committed a crime.  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).  However, officers are not required to ignore the relevant characteristics of a location when determining whether the circumstances are sufficiently suspicious to warrant further investigation.  *Id.*  The fact that a stop occurred in a high crime area is among relevant contextual considerations in a *Terry* analysis along with nervous, evasive behavior. *Id*.  Knowledge of the Defendant's criminal history is likewise a fact to be considered.  *United States v. Strahan*, 984 F.2d 155, 158 (6th Cir. 1993).  The search for weapons in the absence of probable cause to arrest must, like any other search, be strictly circumscribed by the exigencies which justify its initiation.  Thus,  it must be limited to that which  is necessary for the discovery of weapons which might be used to harm the officer.  *Strahan, supra*, at 158 (citing *Terry,* 392 U.S. at 25; *Ybarra v. Illinois*, 444 U.S. 85 (1980)).

Defendant argues that the initial action taken by Officer Vogelpohl constitutes an arrest while the government argues that this is an investigative detention based upon reasonable suspicion.  Based upon the totality of the circumstances, that is, that these officers were the forward surveillance position for a search team whose arrival was imminent, that the Defendant had made several trips to his car before approaching the officers' unmarked vehicle, that this was a high rate of crime area,  that a search warrant

had been issued for units inside the apartment complex, that Defendant had a criminal record, and that the Defendant was evasive as he approached the officers' car provided justifiable circumstances for the officer to protect himself and his partner.  The officers' encounter with the Defendant, placing him on the ground for his own protection and discovery of the firearm occurred instantaneously.  Upon the discovery of the firearm the Defendant was not free to leave and was under arrest.  Additionally, the testimony of the officers demonstrates that the Defendant was given his *Miranda* warning prior to the making of any statements.

## CONCLUSION

Therefore, the Defendant's Motion to Suppress Evidence Seized and any statements made (Doc. 21) is overruled.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*
MICHAEL R. BARRETT, Judge
United States District Court